*996 OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner New York State Department of Environmental Conservation (DEC) commenced this proceeding pursuant to Environmental Conservation Law § 71-2727 to enforce the provisions of article 27 of the ECL governing hazardous waste remediation at property owned and occupied by the respondent Jack Cox and where he operates “Jack’s Auto Parts.” DEC seeks an order permitting DEC and its authorized agents to go onto the Cox property to perform testing and any necessary remediation, and for a monetary sanction based on Cox’s obstruction of past testing and remediation efforts.
The Cox property lies on the banks of the Hudson River directly south of the site of a manufactured gas plant (MGP) that operated from approximately 1888 to 1925. The MGP heated coal and/or coke in special furnaces and processed the resulting fumes to produce gas used for lighting and cooking as well as other useful by-products. Despite the fact that the resulting waste was toxic, the MGP disposed of it by dumping the toxic waste on its grounds and other nearby locations. That waste remains hazardous 80 years after the MGP was closed. National Grid, formerly known as Niagara Mohawk, a National Grid Company (Niagara Mohawk) is the successor in interest to the operator of the MGP
After determining that the MGP’s hazardous waste presents a significant threat to public health and/or the environment, DEC designated the areas contaminated by the MGP as a class 2 inactive hazardous waste disposal site (the MGP site) and determined that the hazardous waste must be removed. Niagara Mohawk has been held responsible for removing the hazardous waste from the MGP site.
The critical first step in hazardous waste remediation is to identify the exact location and type of contaminants present. Locating contamination involves determining the outer perimeter and depth of known areas of contamination. Once a point of contamination is found, this step requires digging down and in an expanding series of test trenches until an uncontaminated clean layer and zone is found.
Although the MGP was located to the north of the Cox property, DEC has already determined that the MGP dumped some of its hazardous waste on property directly south of the Cox property. During the early period that the MGP was operated, a *997 canal extended from the Hudson River into the southern part of the Cox property and then southward away from the Cox property. Test trenches in parts of the former canal south of the Cox property have uncovered “purifier waste.” Only manufactured gas plants produced purifier waste. Consequently, purifier waste’s presence in the former canal establishes that the MGP dumped its waste in the canal and the former canal is part of the MGP site. Test trenches have thus far found MGP contamination of the former canal stretching northward as far as Cox’s southern boundary, making it necessary to place the next test trenches on the Cox property in a northerly direction until uncontaminated soil is found.
DEC directed Niagara Mohawk to investigate the Cox property for contaminants. Beginning in July 2004, Niagara Mohawk attempted to gain access to the Cox property for the purpose of performing the tests necessary to determine whether the MGP contamination continues in the portion of the former canal on the Cox property, and, if so, how far and how deep the contamination of the Cox property extends. Niagara Mohawk presented Cox with a proposed licensing agreement which is typically used in these situations to protect property owners during the course of the testing. Cox refused Niagara Mohawk’s overtures unless they purchased an easement or right of way from Cox. Cox continued to refuse to permit anyone to enter the property despite being informed of DEC’s authority to do so and being warned about the consequences of DEC involvement. When Niagara Mohawk was unable to obtain Cox’s cooperation, it requested that DEC obtain access to the Cox property.
On March 30, 2005, DEC sent a formal notice to Cox by certified mail carefully apprizing him of the fact that DEC is required to investigate whether his property is contaminated, setting forth its statutory authority to do so and notifying him again that “Niagara Mohawk, its consultants, contractors and subcontractors” were designated to go on his property and excavate test trenches. ECL article 27 sets the procedures and powers by which DEC, other state departments and the environmental facilities corporation protect the public health and environment from the threat posed by the hundreds of inactive hazardous waste disposal sites located around the state. Consistent with the need to locate where contamination has been dumped and migrated to, ECL 27-1309 (3) and 27-1313 (8) authorize DEC and its authorized agents to give 10 days’ notice to landowners and then enter upon both inactive hazardous *998 waste disposal sites as well as nearby areas for the purpose of inspecting, taking samples (including digging into the soil and creating monitoring wells) and remediating hazardous waste contamination. The statutes are quite clear in this regard. Consequently, they have generated very few published decisions interpreting them (New York State Dept. of Envtl. Conservation v Damico, 130 AD2d 974 [4th Dept 1987]; Matter of Kohilakis v New York State Dept, of Envtl. Conservation, 171 AD2d 870 [2d Dept 1991]; Matter of State of New York v Lawrence Aviation Indus., 263 AD2d 511 [2d Dept 1999]).
Property owners, such as Cox, are prohibited, pursuant to 6 NYCRR 375-1.2 (c), from either obstructing or attempting to obstruct the DEC or its authorized agents acting pursuant to ECL 27-1305, 27-1309 or 27-1313. Violations of that prohibition subject the violator to a civil penalty “not to exceed thirty-seven thousand five hundred dollars and an additional penalty of not more than thirty-seven thousand five hundred dollars for each day during which such violation continues, to be assessed . . . by the court in any action or proceeding pursuant to [ECL 71-2727]” (ECL 71-2705 [1]).
By letter dated April 5, 2005, Cox, through his counsel, rejected DEC’s authority to enter upon the Cox property and threatened that “[a]nyone entering upon the property without a court order or search warrant will be deemed a trespasser and treated accordingly.” Instead of immediately proceeding against Cox, DEC attempted to enlist Cox’s cooperation. The Office of the Attorney General notified Cox, through counsel, in a letter dated June 3, 2005, that Cox’s denial of access to DEC despite delivery to him of DEC’s March 30, 2005 authorization and notice letter would make it necessary to commence litigation that would subject Cox to a statutory penalty of up to $37,500 for each day that Cox had denied access. The Attorney General even attached a copy of a recent decision in which another Troy land owner was fined $10,000 for obstructing DEC access to another manufactured gas plant site. Despite the Attorney General’s request that Cox grant access without the need for litigation, Cox neither rescinded his demand for a court order or search warrant nor gave any explanation for his obstruction. DEC commenced this proceeding on November 18, 2005.
DEC has met its initial burden of demonstrating that it was entitled to go upon the Cox property and that it gave Cox proper prior notification of remediation actions that would be taken on his property. DEC has also demonstrated that Cox obstructed *999 those lawful efforts at entering, inspecting and sampling when he rejected DEC’s March 30, 2005 letter and declared that they would be treated as trespassers if they attempted to enter his property without a court order or search warrant. Cox continued his obstruction by failing to rescind his earlier letter denying DEC access despite being specifically notified that his obstruction was unlawful and opened him to the heavy penalties set forth in the statute.
It therefore falls to Cox to demonstrate that DEC did not act lawfully, that Cox did not in fact obstruct the DEC or that Cox was privileged to act in the way that he did. Cox’s opposition is noteworthy for failing to address DEC’s petition and the applicable law. Cox urges that the court lacks jurisdiction over him, but has failed to show that DEC failed to comply with the service requirements of the order to show cause signed by the Honorable Christian Hummel or that the copy of the order to show cause served in the manner required by Judge Hummel did not conform to the original. The fact that Judge Hummel failed to set forth a particular date by which service was to be completed does not eliminate the court’s jurisdiction where there has been service eight days before the return date. The court rejects Cox’s argument that DEC was required to give him more notice than Judge Hummel ordered. Cox’s complaints about having too little time to obtain counsel are meritless and now moot in light of the extensions that his counsel has been granted.
Cox has presented no evidence to support his conclusions that DEC may not come onto his property to test, that his property is not affected by the MGP contamination or that the fact that he played no part in contaminating the property invalidates DEC’s authority to come on the property to evaluate whether it is contaminated. ECL 27-1309 (3) and 27-1313 (8) clearly authorize DEC and its designees to go upon land that is “near” designated waste sites even if the land in question has not been determined to have contamination. Cox’s property is, at the very least, “near” the MGP site. Cox has presented no statutory analysis to support his claim that the ECL authorized him to require Niagara Mohawk to meet his monetary demands before allowing them to come on his property to perform the required testing. Cox has failed to present any statutory analysis to support his claim that he has an “absolute right to expect privacy” in his auto salvage yard or that the provisions of the ECL are constitutionally invalid.
*1000 The court rejects Cox’s argument that his counsel’s letter of April 5, 2005, by which he notified DEC that it was not allowed on the Cox property without either a court order or a search warrant, did not serve to obstruct DEC by keeping the DEC and its designees from going onto his property and testing. Cox has presented no statutory analysis that would support a finding that he was entitled to insist on DEC commencing a legal proceeding such as this in order to come on his property. Cox neither alleges nor presents evidence that he or his counsel ever retracted the letter.
The court finds that as of the commencement of this proceeding on November 18, 2005, Cox had violated 6 NYCRR 375-1.2 (c) by obstructing DEC’s mitigation program at the MGP site for 227 days following Cox’s counsel’s letter and that a full 163 of those days elapsed after the Attorney General made the further effort of contacting Cox’s counsel, setting forth the fines that Cox’s obstruction could subject him to and requesting cooperation. Given the Attorney General’s efforts it is clear that Cox recognized that he had no right to demand either a court order or search warrant from DEC, that he knew that he was obstructing the DEC, and that he willfully continued his obstruction despite being aware that his obstruction of the DEC could subject him to substantial fines.
The court concludes that imposition of a civil penalty is necessary under the circumstances. The statutory civil penalty to be assessed by the court for Cox’s obstruction may not exceed $37,500, plus an additional penalty of not more than $37,500 per day during the period which such violation continues (ECL 71-2705 [1]). Accordingly, the court finds that the maximum civil penalty which could be assessed against Cox for the 227 days that he has obstructed the DEC is $8,512,500. The 163 days after Cox’s counsel received the June 3, 2005 letter from the Attorney General would permit a civil penalty of $6,112,500. Under the particular circumstances of this case, the court concludes that penalties in the millions of dollars would be excessive here. The court exercises its discretion by imposing a civil penalty for Cox’s obstruction in the amount of $10,000.
Cox objects to DEC’s request that he assist them by moving stored vehicles away from the location where the test trench (or trenches) will be dug. The court rejects Cox’s characterization of such an order as “enslavement” and finds that giving him the opportunity to move vehicles himself would normally be not only reasonable, but of actual benefit to him. The court finds *1001 that there are unusual circumstances here. Although Cox’s memorandum of law’s statement of facts reflects that Cox continues to operate an automobile salvage yard, it appears from petitioner’s reply papers that Cox was convicted last year of two counts of felony unregistered vehicle dismantling at the site, has still not registered his operation and his continued operation would be illegal. Under those circumstances, a court order permitting Cox to move the vehicles might appear to condone Cox’s continued unregistered operation of Jack’s Auto Parts. Therefore, the court declines to order that Cox move his vehicles or any other material that presently blocks proposed test trenches or blocks access to the proposed test trenches, but instead authorizes DEC or its agents to move any and all vehicles, material and/or fencing as they deem necessary for the purpose of allowing them to access the proposed locations of test trenches on the Cox property and to dig and refill the test trenches. Given Cox’s history of obstruction here, the court enjoins Cox from erecting any new fences, barricades, moving any more vehicles onto the southern half of his property or otherwise interfering with or frustrating DEC or its agents’ efforts either to gain access or dig and refill test trenches in any location of the Cox property.
Accordingly, the petition is granted to the extent of imposing a civil penalty in the amount of $10,000 on Jack Cox pursuant to ECL 71-2705 and immediately enjoining Cox from in any way denying, obstructing, limiting or charging DEC, its authorized agent, Niagara Mohawk, the employees and contractors of either, or any other person authorized by the Commissioner of DEC from going on the Cox property or the property known as the MGP site and performing whatever action they deem appropriate for the purpose of clearing vehicles or any other material that is either blocking the location(s) they have chosen for a test trench or that blocks their access to test trench(es), then testing the property and remediating any environmental problems as are known now or are discovered in the future, and ordering that DEC and the above-named entities shall continue to have access to the Cox property until such time as DEC deems its inspections, investigations and remedial program completed or until further order of this court.
Accordingly it is ordered that Jack Cox pay a civil penalty in the amount of $10,000 on or before July 24, 2006 pursuant to ECL 71-2705; and it is further ordered that Cox is immediately enjoined from in any way denying, obstructing, limiting or *1002 charging DEC, its authorized agent, Niagara Mohawk, the employees and contractors of either, or any other person authorized by the Commissioner of DEC from going on the Cox property or the property known as the MGP site and performing whatever action they deem appropriate for the purpose of clearing vehicles or any other material that is either blocking the location(s) they have chosen for a test trench or that blocks their access to test trench(es), then testing the property and re-mediating any environmental problems as are known now or are discovered in the future, and ordering that DEC and. the above-named entities shall continue to have access to the Cox property until such time as DEC deems its inspections, investigations and remedial program completed or until further order of this court.